### In re ADOPTION OF Jane DOE.

[Cite as *In re Adoption of Doe* (1998), 130 Ohio App.3d 288.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19017.

Decided Dec. 16, 1998.

*Peter T. Cahoon, James B. Chapman,* and *Patricia M. Logue,* for appellant.

*Amie L. Bruggeman,* guardian *ad litem.*

*Susan J. Becker,* for *amicus curiae.*

FARMER, Judge.

Jane Doe was born on July 28, 1990. Jane Doe's biological mother and appellant, the biological mother's lesbian partner, have been together since 1981.

On October 16, 1996, appellant filed a complaint for declaratory judgment seeking to adopt Jane Doe while continuing the parental rights of the biological mother. After extensive briefing, the trial court found appellant to be a suitable person to adopt under R.C. 3107.03, but denied the requested relief because the biological mother could not retain her parental rights if appellant or appellant and the biological mother together were to adopt Jane Doe.

Appellant filed a notice of appeal, and this matter is now before this court for consideration. Assignments of error are as follows:

## I

"The trial court erred in ruling that it had no authority to grant an adoption of a child by her lifelong second parent without terminating the biological mother's parental rights under R.C. 3107.15(A)(1), and in denying declaratory relief and dismissing the adoption petition."

## II

"The trial court erred by not declaring that it had authority to allow a legal parent to relinquish her parental rights and immediately adopt her biological

child jointly with the child's second parent, and in denying declaratory relief and dismissing the adoption petition."

### I

Appellant claims that the trial court erred in denying the petition for declaratory relief. Specifically, appellant claims that the trial court erred in finding that R.C. 3107.15(A)(1) would terminate the biological mother's parental rights upon adoption of Jane Doe by appellant, a nonstepparent. We disagree.

The complaint for declaratory judgment requested a judgment granting the biological mother continued parental rights to Jane Doe, a judgment allowing the filing of the adoption petition by appellant and a judgment approving the adoption of Jane Doe by appellant.

As noted by the trial court, there is no impediment for the proposed adoption because appellant fulfills the requirements of R.C. 3107.03(B) to adopt as appellant is "[a]n ummarried adult." The gravamen of this appeal is what is the effect of an adoption by appellant, "an unmarried adult," on the parental rights of the biological mother.

By opinion and order filed March 4, 1998, the trial court strictly construed R.C. 3107.15(A)(1) and found that an adoption by appellant would terminate the parental rights of the biological parent. The trial court reached this conclusion by finding that the unambiguous language and meaning of the statute required strict construction. We concur with this reasoning based upon the following analysis.

R.C. 3107.15(A)(1) states:

"A final decree of adoption * * * shall have the following effects as to all matters within the jurisdiction or before a court of this state * * *:

"(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and the adopted person's relatives, including the adopted person's biological or other legal parents, so that the adopted person thereafter is a stranger to the adopted person's former relatives for all purposes * * *."

Adoption in Ohio is a creature of statute. Therefore, the general rule that issues not available at common law but subject to statutory creation must be strictly construed must be applied.

In *State ex rel. Kaylor v. Bruening* (1997), 80 Ohio St.3d 142, 145, 684 N.E.2d 1228, 1231, the Supreme Court of Ohio recognized the nature of the language in R.C. 3107.15(A) and its effect on a biological parent:

"R.C. 3107.15(A) provides that a final decree of adoption issued by an Ohio court has the effect of terminating all parental rights of biological parents and creating parental rights in adoptive parents." *State ex rel. Smith v. Smith* (1996), 75 Ohio St.3d 418, 419, 662 N.E.2d 366, 368; *In re Adoption of Greer* (1994), 70 Ohio St.3d 293, 298, 638 N.E.2d 999, 1003.

Appellant and *amicus* argue that the precedent set forth in other Ohio cases indicates that the Supreme Court of Ohio understands that the granting of an adoption relies on a case-by-case analysis:

"Pursuant to R.C. 3107.14, adoption matters must be decided on a case-by-case basis through the able exercise of discretion by the trial court giving due consideration to all known factors in determining what is in the best interest of the person to be adopted. (R.C. 3107.14[C], construed and applied.)" *In re Adoption of Charles B* (1990), 50 Ohio St.3d 88, 552 N.E.2d 884, paragraph three of the syllabus. See also, *State ex rel. Portage Cty. Welfare Dept. v. Summers* (1974), 38 Ohio St.2d 144, 67 O.O.2d 151, 311 N.E.2d 6 (necessity of agency assent to an adoption), and *In re Haun* (1972), 31 Ohio App.2d 63, 60 O.O.2d 163, 286 N.E.2d 478 (agency refused to give consent because of age of petitioners).

We find the cases cited by appellant to be distinguishable from the case *sub judice*. In the cited cases, the Supreme Court of Ohio emphasized the trial court's discretion in determining eligibility to adopt. The case *sub judice* involves not eligibility to adopt but the effects of adoption.

We find this "tremendous trifle" to be the linchpin of this case. By strictly construing the statute that involves the termination of parental rights in favor of adoption, we are adhering to the maxim "adoption statutes are in derogation of common law and therefore must be strictly construed * * *." *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 655, 665 N.E.2d 1070, 1076.

Although we are mindful of the dilemma facing the parties and are sympathetic to their plight, it is not within the constitutional scope of judicial power to change the face and effect of the plain meaning of R.C. 3107.15. This case is not about alternative lifestyles but about statutory construction. When we balance the spirit and motivation of the adoption laws (as appellant argues) against the plain meaning of the statutory language created by the state legislature, we are not empowered to find that the "spirit" includes the issue presented *sub judice*.

Appellant argues that we should use the best interest of the child test in interpreting the statute. We find that to do so would place the "cart before the horse." Best interest pertains to the adoption process, not to the legal effects of

the adoption. Based upon the clear meaning of R.C. 3107.15(A), we find that the trial court did not err in finding that the biological mother's parental rights would terminate upon adoption of the child by appellant, a nonstepparent.

Assignment of Error I is denied.

## II

Based upon our decision in Assignment of Error I, we find Assignment of Error II to be moot.

The judgment of the Court of Common Pleas of Summit County, Ohio, Probate Division, is hereby affirmed.

*Judgment affirmed.*

READER, J., concurs.

WISE, J., concurs separately.

SHEILA G. FARMER, W. DON READER, JR., and JOHN W. WISE, JJ., of the Fifth Appellate District, sitting by assignment.

WISE, Judge, concurring.

I concur in the majority opinion and write separately on Assignment of Error I only to emphasize my belief that this is a legislative issue for the General Assembly. Inherent but unspoken in this case is the legal reality that two individuals of the same sex cannot marry under existing Ohio law and therefore cannot be spouses to each other. Until such time as the General Assembly of Ohio changes the law pertaining to same-sex marriages or rewrites the adoption statutes to specifically allow the requested legal relationship, I cannot interpret the existing adoption statute as contemplating a spousal relationship between two individuals of the same sex such as to create a stepparent relationship in a legal context.